LUCAS ET AL., APPELLANTS, *v.* CENTRAL TRUST COMPANY ET AL., APPELLEES.

[Cite as Lucas v. Central Trust Co. (1976), 50 Ohio App. 2d 109.]

(No. C-75446—Decided August 30, 1976.)

*Condit & Dressing Co., L. P. A.*, for appellants.

*Messrs. Frost & Jacobs, Mr. John A. Lloyd, Jr.*, and *Mr. Edmund J. Adams*, for appellee Central Trust Company.

*Messrs. Graydon, Head & Ritchey* and *Mr. William R. Hardy*, for appellee Fifth Third Bank.

*Messrs. Keating, Muething & Klekamp* and *Mr. Louis F. Gilligan*, for appellee Provident Bank.

McCORMAC, J. Appellants brought a class action against certain banks and automobile dealers, claiming that they were charged an illegal rate of interest on installment loans and contracts made to finance the purchase of automobiles. Appellees moved to dismiss the action for failure to state a claim upon which relief can be granted. The trial court sustained that motion and granted judgment to appellees. From the judgment of the trial court,

appellants have filed a timely notice of appeal, setting forth the following assignment of error:

"The trial court erred in dismissing plaintiffs' second amended complaint."

The allegations of appellants' second amended complaint, including attached exhibits, which are a part of the complaint, show that appellees charged appellants an "add-on" interest rate of less than 8% in all of the examples made a part of the complaint. There is no indication that appellants can produce any proof of "add-on" interest rates of over 8%. "Add-on" interest is a shorthand term which defines a financial charge on a loan, repayable in installments, where the finance charge is determined by calculations of simple interest on the balance financed for the full term, disregarding repayment in monthly installments. The effective rate of interest is, of course, nearly double the "add-on" interest rate, as "add-on" interest is calculated as though the entire amount of the loan were due for the entire term of the loan. For example, the "add-on" interest on a loan of $3,000 for 3 years, at 8%, is $720, based on 8% of $3,000 times 3. The amount that must be repaid is $3,720, adding interest of $720 to the principal of $3,000. If $3,720 were paid at the end of three years, the true interest rate would be 8%. However, if advance deposits or installment payments are required periodically, usually monthly, the true interest rate is almost double, as each payment or deposit reduces the principal. This situation produced the requirement set forth by the "Truth-In-Lending" laws that not only the "add-on" interest rate but the true interest rate as well must be set forth. This is noted on the attached exhibits to the second amended complaint as the annual percentage rate.

It is clear from the pleadings that the sole issue in the case is whether "add-on" interest on installment loans is authorized by Ohio law for use by banks directly or through assignment from automobile dealers. If such "add-on" interest is legal, appellants have failed to state a claim upon which relief can be granted, as there is no possibility that appellants could be entitled to relief. The fact that the

appellees argue the history of "Morris Plan" or "Special Plan" Banking, as well as explaining methods of calculating interest, does not convert the motion to dismiss for failure to state a claim into a summary judgment motion, as that material is explanatory, rather than usable as evidence, in determining the legal issue previously stated. Moreover, if the second amended complaint fails to state a claim upon which relief can be granted, the trial court acted properly in finding it unnecessary to rule on appellants' other motions, including certification as a class action and summary judgment.

The substantive issue in this case is whether banks in Ohio have the right to charge "add-on" interest on installment loans not in excess of 8%, and to receive interest as assignees of such installment contracts entered into by automobile dealers, even though the effective rate of interest exceeds 8%.

R. C. 1107.26, Special Plan Banking, reads as follows:

"(A) A bank which by the terms of its contract with its depositors provides for the receipt of deposits which are not payable unconditionally upon demand or at a fixed time, may, in the case of any loans made in reliance for repayment on the character and earning capacity of the borrower, in addition to discounting interest at the rate allowed by law, require such borrower, as security for such loan, to make periodical deposits in such bank during the period of the loan, with or without an allowance of interest on such deposits, and with or without additional security; and may purchase any obligation payable in installments from the owner thereof, with or without recourse on such owner. Such transactions are not usurious. No reserve shall be required against deposits hypothecated to secure indebtedness of the depositor to the bank.

"(B) A bank may make secured or unsecured loans under the provisions of this section without requiring the borrower to make periodical deposits in such bank as security therefor and may require that such loans be repaid in installments. A bank may charge, collect, and receive from the borrower for such loans an amount not in excess

of the amount which it would be permitted to charge, collect, and receive in the case of loans made under the provisions of division (A) of this section.''

Division (A) of this statute defines what is known as ''Morris Plan Banking,'' a concept developed in 1910 by Arthur J. Morris, a Virginia attorney, to overcome the problem of a bank's insufficient return on money invested in small loans under then-existing interest and usury statutes. Under the Morris Plan, the borrower agreed to pay interest at a rate not in excess of that specified by the usury statute for the full term of the loan. The key to the Morris Plan is that the borrower, as a condition of the loan, is required to make periodic deposits in a special deposit account with the bank, which deposits bear no interests. The effect is that the borrower repays the loan in installments, thus causing the average loan balance to be approximately one-half of the total loan, and effectively returning a rate of interest substantially higher than otherwise permitted under the usury laws. The deposits are called hypothecated deposits.

As a result of the development of this concept, and the recognition that a higher rate of interest was necessary for small installment loans, many states, including Ohio, enacted legislation making such an approach lawful. R. C. 1107.26(A) specifically permits Morris Plan Banking and states that it is not usurious. The rate allowed by law in R. C. 1107.26(A), 8%, is the rate otherwise applicable under the usury statute, R. C. 1343.01. The Ohio Special Plan Banking Statute remained unchanged until 1967, when subsection (B) of R. C. 1107.26 was added. Subsection (B) dispensed with the requirement that borrowers make periodic deposits as security for loans made under the statute and provided instead that a bank can require that such loans be repaid in installments. This amendment was enacted in recognition of the fact that it makes no practical difference whether the periodic deliveries of cash by the borrowers to the bank are deposits or payments, as in either format the bank's return is higher than in a loan not repayable in installments or deposits, because interest is computed

on the original principal balance for the life of the loan, regardless of the fact that the loan is repayable in installments. Thus, it is clear that R. C. 1107.26(B) permits installment loans by banks with an "add-on" interest rate not exceeding 8% per annum, without being unlawful or in violation of usury laws.

A second group of plaintiffs are those who purchased automobiles from dealers executing a retail installment contract with the dealer which was thereafter assigned to a bank. The finance charge in each of these instances was also based on "add-on" interest not in excess of 8% per annum.

Appellants claim that, even if banks are authorized to charge "add-on" interest by R. C. 1107.26, that authorization does not extend to retail sellers. That contention is not well taken as R. C. Chapter 1317 permits interest on retail installment sales, including the sales herein, to be calculated on the same basis as that permitted by R. C. 1107.26, although stated in different language.

R. C. 1317.06 provides, as pertinent:

"(A) A retail seller at the time of making any retail installment sale may charge and contract for the payment of a finance charge by the retail buyer and collect and receive the same, which shall not exceed the rates as follows:

"(1) A base finance charge at the rate of eight dollars per one hundred dollars per year on the principal balance of the retail installment contract. On retail installment contracts providing for principal balances less than, nor not in multiples of one hundred dollars, or for installment payments extending for a period less than or greater than one year, said finance charge shall be computed proportionately."

Thus, it is clear from this language that interest on retail installment sales is computed on the same basis as previously discussed in conjunction with R. C. 1107.26. At the time of the sale, the finance charge is computed by multiplying the principal balance by the rate (not to exceed 8%) and by the number of years. Hence, the install-

114

ment contracts executed with the retail sellers are also legal.

Appellants' assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, P. J., and PALMER, J., concur.

McCORMAC, J., of the Tenth Appellate District, sitting by designation in the First Appellate District.